# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

PAUL HANSMEIER,
        Plaintiff,

v.

WILLIAM BARR, in his official capacity
as Attorney General of the United States,
        Defendant.

Case No.   20-cv-710-jdp

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Date: July 28, 2020

Paul Hansmeier
20953-041 Unit K3
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

<u>Introduction</u>

1. This lawsuit challenges the constitutionality of the federal mail fraud, wire fraud and extortion statutes, 18 U.S.C. §§ 1341, 1343 and 1951, respectively, federal statutes that prohibit and chill copyright holders from testing for infringement on the internet and bringing colorable copyright enforcement claims against people who pirate the work. This chill arises because these statutes (the "Challenged Statutes") have been used to criminalize internet-based infringement testing/subsequent petitioning activity.

2. Without online infringement testing, copyright holders and the American public will have no way to ensure that the copyright laws continue to provide effective protection from infringement in the twenty-first century.

3. In the offline world, infringement testing has been recognized as a routine way to uncover infringement and to vindicate the copyright laws, in particular the Copyright Act's granting of exclusive rights to copyright holders as a mechanism for incentivizing the creation of creative works. This testing involves employing an investigator to pose as an ordinary person and present copyrighted works to suspected infringers to determine if the people will pirate the works— and, if they do, then bringing copyright enforcement claims against people who pirated the works. The law has long protected such socially useful copyright enforcement activity in the offline world. In the online world, however, the government has successfully prosecuted copyright holders for bringing copyright enforcement claims arising from online infringement testing.

4. As a result, individuals and organizations risk prosecution for bringing copyright enforcement claims arising from internet infringement testing. They face prosecution even where, as in the case of Plaintiff's activities,

-2-

the internet-based infringement testing gives rise to colorable prima facie claims for violations of the Copyright Act, 17 U.S.C. §§ 101 et seq. and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

5. The Challenged Statutes' criminalization of conducting robust online infringement testing and bringing copyright enforcement claims based on that testing is of real concern given that the internet is the overwhelmingly dominant method of communication and data transfer and thus the primary, if not near-exclusive, means of copyright infringement. Depriving copyright holders of copyright enforcement methods used in the offline context will make it extraordinarily difficult, if not impossible, for rights holders to protect their works from internet-based infringement.

6. The internet enables people to infringe copyrighted works on an industrial scale at virtually no cost. With a click of a button, internet users can implement a process that will allow them to obtain a copyright holder's entire library of works in perfect digital copies, in a matter of minutes. Modern piracy technology is decentralized, meaning that there is no central server or other service for the government or a civil plaintiff to pursue. To the extent that there are websites or other resources that help coordinate infringement activities, these sites are often located beyond the government's reach in nations that refuse to cooperate with the government in protecting United States rights holders. These sites and other resources are easily replicable — meaning that shutting one site down will just result in another site popping up in its place. The federal government has repeatedly acknowledged the enormous scope of the problem posed by digital infringement/piracy. See U.S. Govt. Accountability Office, GAO-10-423, Intellectual Property: Observations on Efforts to Quantify the the Economic Effects of Counterfeit and Pirated Goods, 23-24 (2010) (estimating that the U.S. economy loses $158 billion annually and 370,000 jobs as a result of internet copyright infringement).

-3-

7. The Plaintiff in this case, who is a copyright holder, wishes to bring claims under the Copyright Act and the Computer Fraud and Abuse Act arising from online infringement testing. Plaintiff asked a third party to present Plaintiff's copyrighted work to suspected online infringers via a notorious digital piracy website. Three users of the website decided to access Plaintiff's investigator's computer to pirate the work. Plaintiff wishes to pursue these infringers in court, but is chilled from doing so by the credible risk of criminal prosecution under the Challenged Statutes.

8. The Plaintiff's testing activities, which include making copyrighted works available to suspected online infringers via notorious digital piracy websites and petitioning the courts for relief under the Copyright Act and the Computer Fraud and Abuse Act, constitute speech and petitioning activity that is protected by the First Amendment, and that has been criminalized by the Challenged Statutes. The overbroad and indeterminate nature of the Challenged Statutes prohibits and chills a range of speech and petitioning activity protected by the First Amendment, because it prevents Plaintiff from conducting robust copyright enforcement against internet piracy.

9. Plaintiff therefore brings this action to enjoin the enforcement of the Challenged Statutes as applied to him, as violating the First Amendment and the Due Process Clause of the Fifth Amendment to the U.S. Constitution and as impermissibly intruding on powers delegated to the coordinate branches of government.

## Jurisdiction and Venue

10. This action arises under the U.S. Constitution, including the First Amendment and the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331. This Court may award Plaintiff declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and this Court's inherent equitable jurisdiction.

12. Venue is proper in the U.S. District Court for the Western District of Wisconsin pursuant to 28 U.S.C. § 1391(b). This action challenges the constitutionality of a statute that applies in this judicial district.

## Parties

13. Plaintiff Paul R. Hansmeier is an inmate at the Sandstone Federal Correctional Institution in Sandstone, Minnesota. Plaintiff requests that his complaint be afforded the liberal construction given to complaints filed by pro se prisoners.

14. Plaintiff wishes to engage and is engaging in testing for internet-based infringement of his copyright and wishes to bring claims for copyright infringement and violations of the Computer Fraud and Abuse Act against people who have pirated the works subject to this testing.

15. Defendant William Barr is the Attorney General of the United States and is sued in his official capacity. The Attorney General oversees the enforcement

-5-

of federal criminal statutes. As the head of the Department of Justice, he supervises its officers and employees, including the United States Attorneys.

## The Challenged Statutes

16. In December 2016, the U.S. Attorney for the District of Minnesota charged Hansmeier with federal mail and wire fraud offenses based in relevant part on allegations that Hansmeier instructed an investigator to upload copyrighted works to notorious digital piracy websites and brought copyright enforcement claims against people who pirated the works. The government alleged that Hansmeier's use of these copyright enforcement methods resulted in frivolous copyright enforcement claims and that Hansmeier used deception to conceal his use of these methods and his involvement with the cases. United States v. Hansmeier, 16-cr-334 (D. Minn.).

17. Hansmeier moved to dismiss the indictment based on his argument that the acts alleged in the indictment did not constitute a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," within the meaning of 18 U.S.C. § 1341 + § 1343. The district court denied Hansmeier's motion to dismiss. Hansmeier's challenge to the legal sufficiency of the allegations in the indictment is pending before the U.S. Court of Appeals for the Eighth Circuit. United States v. Hansmeier, No. 19-2386 (8th Cir.). In its appellate briefing, the government repeatedly referred to Hansmeier's copyright enforcement methods as the uncharged offense of extortion. Appellee's Response Brief at i, 8, 9, 20, 28, 34, 39, 43, 51, 61.

-6-

18. In his anticipated copyright enforcement cases, Plaintiff will proactively address some of what the government complained about in the indictment. Plaintiff's cases will be brought under Plaintiff's given name and Plaintiff's use of the investigative methods described herein will be fully disclosed. These features will eliminate any plausible basis for the government to complain that Plaintiff's involvement with the case or his investigative methods are somehow concealed from all interested parties.

19. Plaintiff's proactive efforts will not be sufficient to address all of what the government complained of in its indictment. Most notably, Plaintiff will continue to join issue with the government's as-of-yet unresolved but demonstrably incorrect claim that the investigative methods described herein yield frivolous copyright enforcement claims.

20. Plaintiff has an objectively reasonable belief that conducting the testing and investigation he has designed to uncover internet-based copyright infringement and bringing claims under the Copyright Act and the Computer Fraud and Abuse Act based on piracy identified and documented during that investigation would subject him to criminal liability. Plaintiff also has an objectively reasonable fear of criminal prosecution under the Challenged Statutes.

## Testing and the Copyright Act

21. For at least five decades, testing has been central to enforcement of the Copyright Act, 17 U.S.C. § 101 et seq.

-7-

22. The Copyright Act was created by Congress in furtherance of its Constitutional power to promote the useful arts and sciences. U.S. Const. Art. 1 §8.

23. To this end, the Copyright Act grants copyright holders the exclusive right to copy works protected by a copyright.

24. People who violate a copyright holder's exclusive right to copy are subject to suit for copyright infringement. To establish a claim for copyright infringement, a copyright holder must establish two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

25. Because they are subject to suit for copyright infringement, people who infringe upon a copyright holder's exclusive right to copy do not publicize their infringing activity. In the offline context copyright holders have employed investigators to approach/audit potential infringers by presenting a copyrighted work to the potential infringer and offering "an opportunity to infringe" upon copyrighted works. Olan Mills Inc. v. Linn Photo Co., 23 F.3d 1345, 1348 (8th Cir. 1994). See also RCA/Ariola Int'l Inc. v. Thomas & Grayston Co., 845 F.2d 773 (8th Cir. 1988); RCA Records v. All-Fast Sys. Inc., 594 F. Supp. 335 (S.D.N.Y. 1984). Courts have rejected challenges brought by infringers caught via this investigative method.

26. In the Olan Mills case, cited in the preceding paragraph, a photo studio suspected other photo studios of making unauthorized copies of the family portraits in which it held copyrights. The photo studio took (and copyrighted)

-8-

a photograph of some of its employees who posed for a staged family portrait and hired an investigator to go around and present the copyrighted photo to possible infringers. When some of the infringement suspects took the bait and copied the work, the photo studio brought a copyright enforcement action against the infringers. The infringers defended against the claims arguing that the photo studio's use of an investigator amounted to entrapment and vitiated the copyright holder's claim for copyright infringement. The Eighth Circuit rejected the infringer's position and ordered the district court to enter judgment in the copyright holder's favor.

27. As a result of Olan Mills and other similar cases, it is firmly established that a copyright holder may use an investigator to audit potential infringers for infringement by going around and presenting works to possible infringers to test whether the infringers will take the bait by copying the work. When infringers are caught by this investigation, they are liable for infringement and have no defense. See, e.g., 4-13 Nimmer on Copyright § 13.09[B] ("Use of ... undercover investigators to ferret out infringement is routine, and provides no defense.").

28. The arrival of the internet did not alter the copyright landscape. Someone who uses the internet to copy a copyrighted work is liable for copyright infringement. Someone who uses the internet to copy a copyrighted work that was presented to them by an investigator is liable for copyright infringement. Any attempt by a copyright infringement defendant to defend on the grounds that the copyright holder "set them up" to commit infringement is simply "frivolous ... [a copyright holder's] own intentions are utterly irrelevant to the question of whether the [d]efendant infringed the copyright... [T]he elements of copyright infringement do not contain an element that inquires into the state of mind of the copyright holder." Harrington v. Aerogelic Ballooning, LLC, 18-cv-2023 (MSK/NYW), 2018 U.S. Dist. LEXIS 201866, at * 4-5 (D. Colo.

-9-

Nov. 29, 2018). Thus, in the age of the internet, copyright holders may use an investigator to present works to potential infringers as a means of testing for infringement and bring colorable claims for copyright infringement against people who take the bait and copy the work. See id.; See also BMG Rights Mgmt. (US) LLC v. Cox Commc'n, Inc., 149 F. Supp. 3d 634, 678 (E.D. Va. 2015) (rejecting infringer's argument that copyright holder's use of investigators somehow defeated claim for copyright infringement).

29. Infringement testing is arguably more important in the online world than the offline world. The internet has made it incredibly easy and cheap to infringe copyrighted works; accordingly, copyright infringement skyrocketed with the rise of the internet. Robust online infringement testing is the only practical means of combatting widespread digital piracy. This is particularly true with respect to peer-to-peer infringement which does not rely on some sort of centralized server that the government can target and take down. In peer-to-peer infringement, which has become the dominant form/method of infringement, internet users transfer files directly between one another. Without the use of an investigator to pose as an ordinary peer-to-peer user, there would be no lawful way to monitor infringements.

30. Online infringement testing is a vital and ~~lawful~~ legitimate means of ferretting out internet-based infringement, and it results in colorable claims for copyright infringement.

## Testing and the Computer Fraud and Abuse Act

31. Online infringement testing also gives rise to colorable claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA").

32. The CFAA prohibits accessing "protected computer[s]" without authorization and obtaining information. 18 U.S.C. § 1030(a)(2)(C) (the "Access Clause") provides that:

Whoever ... intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains ... information from any protected computer... shall be punished as provided in subsection (c) of this section.

33. The CFAA authorizes a private civil cause of action for violations of the Access Clause where the plaintiff can show damage or loss exceeding $5,000 - a requirement that is readily met in the typical copyright enforcement action alleged herein. 18 U.S.C. § 1030(g).

34. Each of the elements of an Access Clause violation are satisfied:

a. Intentional access. In the online peer-to-peer infringement testing Plaintiff has conducted and plans to conduct, a computer user will use software that accesses third-party computers to download Plaintiff's copyrighted work. In particular, the infringer will access a computer belonging to Plaintiff or his investigator. The infringer's access to this computer will be intentional versus inadvertent or accidental.

b. Without authorization. While "without authorization" is not defined by the statute, the exact phrase regularly appears in copyright enforcement actions. See e.g. Sullivan v. Flora, Inc., 936 F.3d 562, 567 (7th Cir. 2019) ("[J]ury considered whether Flora copied and used Sullivan's illustrations without authorization.")(emphasis added). And, in the cases cited in paragraphs 21-30, supra, courts rejected copyright infringement defendants' arguments that a copyright holder's use of an investigator to conduct

infringement auditing / testing gave rise to "authorization." It is certainly colorable to believe that Courts will interpret the phrase "without authorization" in comparable manners across the Copyright Act and the CFAA.

### c. Protected computer.

The term "protected computer" includes ^a computer "which is used in or affecting interstate or foreign commerce or communications...." 18 U.S.C. § 1030(e)(2)(B). Courts have interpreted the term "protected computer" as including any computer connected to the internet.

### d. Obtains information.

The defendants in Plaintiff's copyright enforcement actions will have obtained information in the form of data comprising the computer file containing Plaintiff's copyrighted work.

35. Plaintiff has a reasonable basis to believe that online infringement testing will yield colorable CFAA claims.

### Plaintiff's Specific Online Infringement Testing Plans

36. Plaintiff Paul R. Hansmeier owns the copyright to a short adult video. He intends to engage in the copyright enforcement methods described specifically herein, but is chilled by the credible threat of criminal prosecution.

37. Plaintiff seeks to use the enforcement/testing methods attributed to the plaintiff-copyright holder in Malibu Media v. Doe, No. 13-11432

2014 U.S. Dist. LEXIS 79889 (E.D. Mich. June 12, 2014).

38. Plaintiff intends to test for online infringement that occurs via the BitTorrent file distribution method. See Malibu Media, LLC v. Doe, 291, 193-94 (N.D. Ill. 2013) (explaining how BitTorrent works).

39. In relevant part BitTorrent allows internet users to post a link on a website that, when clicked, opens up BitTorrent software which uses the information contained in the link to access a file contained on the computer of the person who posted the link.

40. Over time, as more people copy the work, subsequent users will be able to access pieces of the file from other copiers' computers, which allows for more efficient distribution. The important point, though, is that BitTorrent users connect directly to other users' computers to copy a work.

41. The websites where "torrent links" are posted are generally referred to as torrent websites. Some of these websites, such as The Pirate Bay, are among the most popular websites in the world.

42. Torrent websites are well known as piracy havens. The operators of those websites, who pull in millions of dollars by converting their massive user traffic into advertising dollars, are frequently the targets of criminal prosecutions by the United States government. See e.g. United States v. Vaulin, 16-cr-438-1, (N.D. Ill.) (charging operator of Kickass Torrents with criminal copyright infringement).

43. Ultimately, though, the government is powerless to stop the proliferation of these websites. Whenever one website is shut down another website just pops up in place of the old one — after all, the new website need only copy the links from the old website. Modern torrent website operators domicile their operations in countries that refuse to cooperate with the U.S. government's anti-piracy operations. The operators are arrested only when they are foolish enough to visit the United States or a country that cooperates with these efforts.

44. Torrent websites can be used to download virtually any song, movie, tv show, adult video file, software or book that is commercially distributed. An artist, author or software developer who invests the time and money to create and market a work does so largely only to see it get pirated via BitTorrent. The state of intellectual property rights enforcement is so dismal that millions more people watched Game of Thrones via illegal copies obtained via BitTorrent than who paid for the right to view it. Music artists make most of their money from touring rather than through album sales.

45. Against this background, Plaintiff's testing method will consist of asking/instructing an investigator to post a torrent link on a torrent website. When a user of the website clicks on the link, the user's computer will open up torrent software which will access Plaintiff's investigator's computer to obtain a copy of Plaintiff's adult video, which Plaintiff holds the copyright to. As is typical on torrent websites, the link will be posted anonymously; the torrent website's users will have no reason to believe that the link was posted by the copyright holder's investigator.

46. To complete his investigation, Plaintiff will bring claims

-14-

under the Copyright Act and the CFAA against people who visited a notorious piracy torrent site; found the link pertaining to Plaintiff's copyrighted work, decided to pirate the file instead of paying for it and clicked on the link and accessed Plaintiff's investigator's computer to pirate/copy the work.

47.  Plaintiff has already completed the first step of his investigation. He instructed his investigator to post a link on a torrent website. Three people pirated the work in the manner described above, on or around June 29, 2020. Plaintiff now seeks to bring Copyright Act and CFAA claims against the people who pirated his work. He is chilled from doing so by the credible threat of criminal prosecution.

48.  In the complaints he would file, Plaintiff will disclose his use of the testing methods described above and Plaintiff will personally be the plaintiff (or, if for some unexpected reason he is not the named plaintiff, plaintiff's relationship to the case will be very exhaustively disclosed).

## The Importance of Robust BitTorrent Infringement Testing

49.  BitTorrent piracy is the dominant form of piracy. Plaintiff's experience is limited to the adult industry, where revenues for many producers plummeted as much as 90% in lockstep with the rise of BitTorrent piracy. It can be expected that other content producers experienced comparable economic harm.

50.  The harm from piracy is significant. In addition to the economic loss suffered by producers, the public suffers an enormous loss in terms of the works that were never produced in the first instance. While one could

reasonably debate the utility of additional adult content; we can all feel a sense of loss for all of the Harry Potter's that never were as a result of piracy's destruction of the market for creative intellectual property. In an age where the internet's promise of nearly free international distribution for creative works offered to empower upstart content producers, all that investment in creative works yields is more piracy, with the exception of the minority of people who actually pay for the media they consume.

51. The government is powerless to shut down the websites which coordinate BitTorrent piracy. Moreover, the government cannot prosecute individual copyright pirates because the criminal statutes only apply to infringement for profit, rather than personal use.

52. It is up to private copyright holders, then, to put an end to BitTorrent piracy. Plaintiff has personally been involved with many different cutting edge strategies for combating BitTorrent-based piracy. The only strategy that has been effective is the testing strategy described above. Once pirates believe that the links on torrent websites were posted by copyright holders as a lawsuit trap then, in plaintiff's personal experience, the pirates will warn each other and stop using the site. And, since it is easy and free to post links on torrent websites, new sites that pop up can easily get innundated with testing links. With robust testing efforts, copyright holders could very quickly make piracy websites unprofitable to operate by detterring lucrative advertising targets (Americans, Europeans and some Asians) from using the sites. Anti-piracy claims can readily be filed in most countries which were signatories to international copyright treaties.

## Plaintiff's Injuries

53.   Plaintiff has the goal of testing for online infringement to determine whether people will infringe his copyright if presented with the opportunity to do so.

54.   Plaintiff wishes to bring claims for copyright infringement and violations of the CFAA's Access Provision against people who pirate his work by copying it from his investigator's computer.

55.   The testing and petitioning activities described above would, if carried out, in the government's view violate the Challenged Statutes because (again, in the government's view) the claims for copyright infringement and Access Provision violations would be frivolous and, according to the government, it is fraud and extortion to pursue frivolous claims.

56.   Plaintiff has a fundamental difference of opinion with respect to the strength of his copyright enforcement claims. Plaintiff believes his anticipated claims will be meritorious and, if the government disagrees, Plaintiff would like an Article III judge to make that determination instead of a line prosecutor with limited civil copyright enforcement experience.

57.   Plaintiff is injured because he is placed in the position of either refraining from engaging in his testing and petitioning — all of which constitutes constitutionally-protected speech or petitioning activity, or conduct necessarily antecedent to such speech or expressive/petitioning activity — or of exposing himself to the risk of prosecution under the Challenged Statutes.

58.   The Challenged Statutes chill Plaintiff because: (i) he is placed in reasonable fear of being prosecuted for engaging in constitutionally protected

expressive/petitioning activity to test for and pursue judgment against online infringers, or (2) because he must refrain from testing or petitioning activity to avoid the risk of prosecution.

## The Challenged Statutes Violate the First Amendment as Applied

59. The Challenged Statutes make it a criminal violation to petition the government for a redress of grievances for copyright infringement and computer trespass, where a copyright holder engages in online infringement testing and brings colorable claims as a result. The petitioning activity chilled by the Challenged Statutes is protected by the First Amendment, as is the speech and expressive activity associated with the antecedent investigative activity.

60. As applied to Plaintiff, the Challenged Statutes fail strict scrutiny. The government, far from having a compelling interest in preventing Plaintiff's testing and petitioning, has an interest in ensuring the enforcement of copyrights on the internet and in people using the courts to resolve disputes instead of resorting to self-help remedies. The government's interest in preventing litigation misconduct is more than adequately served by judicial oversight and criminal statutes designed specifically for that purpose, including the federal perjury statute.

61. As applied to Plaintiff, the Challenged Statutes violate the First Amendment.

## The Challenged Statutes are Vague, in Violation of the Due Process Clause.

62. The Challenged Statutes are, as applied to internet infringement testing

and subsequent petitioning activity, void for vagueness.

63. The Challenged Statutes fail to notify ordinary people that it is criminal to conduct online infringement testing and sue people who are caught pirating the work.

64. The plain text of the Challenged Statutes does not clearly cover instances where a copyright holder asserts copyright enforcement claims against people who pirate copyrighted works. This is true even in instances where the copyrighted works were made available online at the copyright holder's instruction as part of an internet infringement testing scheme.

65. Because the Challenged Statutes chill speech and expressive/petitioning activity as described above, the Due Process Clause requires a heightened degree of statutory specificity. The vagueness of the Challenged Statutes as applied to the testing and petitioning activity described herein fails to give reasonable notice of what conduct is prohibited, invites arbitrary and discriminatory enforcement, and deters constitutionally-protected speech. It thus violates the Due Process Clause.

The Challenged Statutes Allow the Executive to Impermissibly Intrude on Powers Assigned by the Constitution to the Coordinate Branches

66. The Challenged Statutes' use by the Executive branch officers to criminalize the investigative and petitioning activities described herein impermissibly intrudes on powers assigned to the Legislative and Judicial branches of the federal government.

67. Article I Section 1 of the United States Constitution vests the legislative power in Congress. The legislative power is the power to make the law. Congress exercised this power by creating the Copyright Act and the CFAA.

68. Article I Section 8 of the U.S. Constitution vests Congress with the power "to promote the ... useful Arts...." Congress has exercised this power by creating the Copyright Act.

69. Article III Section 1 of the U.S. Constitution vests the judicial power in the Supreme Court and the lower courts created by Congress. The judicial power is the power to say what the law is. The judiciary has exercised this power by interpreting the Copyright Act and the CFAA.

70. Defendant's criminalization of internet infringement testing and subsequent petitioning activity imposes (through actual and threatened prosecution) via the Challenged Statutes substantive requirements for claims for copyright infringement and violations of the CFAA that are not based in the texts of the statutes or judicial interpretations thereof,

71. Defendant's use of the Challenged Statutes in this manner unconstitutionally intrudes upon Congress's powers to make the law and promote the useful arts and the judiciary's power to interpret the law.

72. For these reasons, as applied to the copyright enforcement activity described herein, the Challenged Statutes are unconstitutional.

-20-

## CLAIMS FOR RELIEF

First Cause of Action

## FIRST AMENDMENT

73. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

74. The Petition Clause of the First Amendment of the U.S. Constitution provides that "Congress shall make no law... abridging ... the right of the people,... to petition the Government for a redress of grievances." U.S. Const. amend. I.

75. As applied to Plaintiff, the Challenged Statutes prohibit the speech and expressive activity neccessary to access the courts in order to enforce rights and protections granted by the Copyright Act and the CFAA in the internet infringement testing context.

76. As applied to Plaintiff, the Challenged Statutes are not narrowly tailored to any legitimate, compelling, or overriding government interest. The government in fact has an interest in Plaintiff's robust ferretting out of internet copyright infringement via testing and subsequent petitioning.

77. As applied to Plaintiff, the Challenged Statutes are not justified by a legitimate, compelling or overriding government interest.

78. The Challenged Statutes violate the First Amendment.

Second Cause of Action

## VOID FOR VAGUENESS

79. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

80. The Due Process Clause of the Fifth Amendment to the United States Constitution provides that "No person shall ... be deprived of life, liberty, or property, without due process of law."

81. The Challenged Statutes are unconstitutionally vague as applied to internet infringement testing and subsequent petitioning activity because they fail to define a criminal offense with sufficient specificity to notify an ordinary person that this conduct is prohibited.

82. The vagueness of the Challenged Statutes chills and deters speech and expressive/petitioning activity protected by the First Amendment.

83. The Challenged Statutes violate the Due Process Clause of the Fifth Amendment.

Third Cause of Action

## SEPARATION OF POWERS

84. Plaintiff re-alleges and incorporates by reference all allegations set forth above.

85. As applied to criminalizing internet copyright testing and subsequent petitioning activity, the Challenged Statutes unconstitutionally intrude upon Congress's powers to legislate and promote the useful arts and sciences and the judiciary's power to interpret the law. Congress and the federal courts have exhaustively interpreted/legislated the law of copyright enforcement. The government's use of the Challenged Statutes to override the established copyright enforcement framework with its preferred vision of copyright enforcement violates the Constitution.

Prayer for Relief

Plaintiff respectfully requests a judgment:

1. Declaring that the Challenged Statutes, 18 U.S.C. §§ 1341, 1343 and 1951, as applied to Plaintiff, violate —

   a. the First Amendment to the U.S. Constitution;

   b. the Due Process Clause of the Fifth Amendment to the U.S. Constitution; and

   c. the U.S. Constitution's Separation of Powers;

2. Permanently enjoining the Defendant Attorney General, as well as his officers, agents, employees, attorneys, and all other persons in active concert or participation with him, from enforcing 18 U.S.C. §§ 1341, 1343 and 1951 ~~for~~ against Plaintiff for testing for internet infringement and petitioning the courts for relief under the Copyright Act and Computer Fraud and Abuse Act's Access Provision, 18 U.S.C. § 1030 (a)(2)(c) against people who pirate a work subject to Plaintiff's copyright by copying a file from

-23-

Plaintiff's or his investigator's computer;

3. Awarding Plaintiff's attorneys' fees and costs under the Equal Access to Justice Act; 28 U.S.C. § 2412; and

4. Awarding such other and further relief as this Court deems just and proper,

Dated: July 28, 2020

Respectfully submitted;

Paul Hansmeier
20953-041 Unit K3
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072